UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER MARTIN,<br><br>                                          *Plaintiff,*<br><br>- against -<br><br>THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER GEONG KIM, individually and in his official capacity as a New York City Police Officer, and JOHN DOE POLICE OFFICERS 1-25, whose identities and numbers are unknown, individually and in their official capacities as New York City Police Officers,<br><br>                                          *Defendants.* | **Case No.: 1:18-Civ-03241**<br><br><u>**COMPLAINT**</u><br><br><u>**Jury Trial Demanded**</u> |

       Plaintiff Peter Martin ("Peter" or "Plaintiff"), by and through his undersigned counsel, Schlam Stone & Dolan LLP, for his Complaint against defendants, alleges as follows:

<u>**NATURE OF THE ACTION**</u>

       1.     This is an action arising out of the unprovoked beating of a middle school science teacher by New York City Police Officers while he was leaving a Mets game on a late spring evening. Peter had gone to the game with a group of current and retired teachers from his Connecticut public school to mark the coming end of the school year, a night out that was an annual tradition among the group. For Peter, however, what began as a collegial outing ended as a personal nightmare at the hands of defendant Police Officer Geong Kim ("Kim," or "P.O. Kim") and the John Doe police officer defendants whose identities are currently unknown to Plaintiff.

       2.     As Peter was leaving the stadium with his group after the game—men predominantly in their 40s, 50s, and 60s—Kim, out of nowhere and wearing nothing to identify himself as a policeman, grabbed Peter from behind, pulled him off balance, knocked him in the

jaw, and pushed him to the ground head first, causing his forehead to strike the pavement with intense force. Within seconds a heavily armed team of officers descended upon Peter. The officers kicked him viciously on his backside while he was on the ground helpless, and pushed him around like he was their plaything. Peter was frisked, handcuffed, taken to a precinct, booked, and put behind bars with hardened criminals. In court the next day, the presiding judge immediately saw the complete absence of justification for Peter's arrest, and urged the Assistant District Attorney to dismiss the case. Peter received an adjournment in contemplation of dismissal then and there.

3. As set forth below, the conduct of the defendant police officers was devoid of justification; indeed, it lacked any colorable basis in fact at all. P.O. Kim had no reason to pick Peter out of the crowd and set upon him with brutal force. Peter was not being boisterous or creating a disturbance, but was simply conversing with his colleagues as they all left the baseball game. Numerous witnesses saw the whole thing and will testify to exactly that. Rather than acknowledge his mistake, Kim invented trumped up charges to try and justify the vicious and excessive force he used to abuse a middle-aged school teacher.

4. As a result of Kim's and the John Doe defendants' wrongful conduct, Peter suffered injuries, among others, to his head, jaw, knees, and buttocks. The wound to his head was so bad that the EMTs who saw him expressed shock. Yet they were prevented by P.O. Kim from offering Peter medical attention beyond ice and band-aids. Upon his release the next day Peter went to the emergency room seeking proper medical treatment for what defendants did to him, including treatment he should have gotten the day before when his head wound was dripping with blood.

5. For the stark violation of his constitutional rights and the physical and emotional harm he suffered, Peter is owed compensatory damages, punitive damages, and attorneys' fees, as well as such other relief as the Court deems proper.

## THE PARTIES

6. Plaintiff Peter Martin is a citizen of the United States and resident of Connecticut. He is 48 years old and a middle school science teacher in the Connecticut public school system. Peter has been a teacher for 20 years. He has been married for over 20 years and has two teenage children. Peter's brother spent five years as a New York City police officer and is now a police officer in Connecticut.

7. Defendant City is a municipal corporation organized under the laws of the State of New York.

8. Defendant NYPD is a department, agency and/or branch of Defendant City and is responsible for the operation, management, and control of the New York City police force and all of its officers, agents, and employees.

9. Defendant P.O. Kim was at all relevant times an officer, employee, and/or agent of the NYPD. Upon information and belief, P.O. Kim was acting under color of state law and within the scope of his employment as a New York City law enforcement officer at all times relevant to this action. To the extent, if any, that P.O. Kim was not acting within the scope of his employment as a New York City law enforcement officer then, upon information and belief, his actions were the result of negligent hiring, training, and/or supervision. P.O. Kim is being sued in his individual capacity.

10. Defendants John Doe Police Officers were at all relevant times officers, employees, and/or agents of the NYPD who were present during and/or personally participated in the events described in this Complaint. Upon obtaining the names of the John Doe Police Officers via discovery or otherwise, Plaintiff will amend this Complaint to identify them by name to the extent possible.

11. Upon information and belief, the John Doe Police Officers were acting under color of state law, and within the scope of their employment as New York City law enforcement officers, at all times relevant to this action. To the extent, if any, that one or more the John Doe Police Officers was not acting within the scope of their employment as a New York City law enforcement officer then, upon information and belief, their actions were the result of negligent hiring, training, and/or supervision. The John Doe Police Officers are being sued in their individual capacities.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343, and 1367(a). Specifically, the Court has jurisdiction over Peter's federal claims under 28 U.S.C. §§ 1331 and 1343. The Court has supplemental jurisdiction over his state law claims under 28 U.S.C. §§ 1367(a).

13. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to Peter's claims occurred in Queens, New York, a borough of the City of New York that lies within the Eastern District of New York.

## NOTICE OF CLAIM

14. Plaintiff served a Notice of Claim on the Comptroller of the City of New York (the "Comptroller"), by serving such Notice of Claim on the New York City Law Department and on the Comptroller on or about August 17, 2017, within 90 days of the events giving rise to this Complaint. A Rule 50-h examination was conducted by Defendants on or about December 4, 2017. No date and time for a physical examination under Rule 50-h was ever provided, and more than 90-days have elapsed since the date of the Notice of 50-h hearing.

15. More than 30 days have elapsed since service of the Notice of Claim and adjustment or payment thereof has been neglected or refused by the Defendants.

## TRIAL BY JURY

16. Plaintiff demands a trial by jury of all the claims asserted in this Complaint.

## STATEMENT OF FACTS

**The Middle School Teachers' June 2, 2017 Outing To Citi Field**

17. Every year for the last 15 years, current and former teachers from Peter's public middle school have marked the approaching end of the school year with an evening out. Peter has attended most of these events. For the last two years the group has gone to a Mets game. In 2017, they arranged to attend a June 2 game at Citi Field against the Pirates, and Peter attended. The group comprised current and former teachers from the middle School in Darien, CT, where Peter teaches middle school science.

18. At around 10:00 p.m., as the game was ending, Peter left his seat and headed toward the exits. By about 10:10 p.m. he was downstairs walking out of the stadium. He was in the middle of his group chatting with one of his colleagues about life and their summer plans, walking unhurriedly out of the stadium.

19. Suddenly and without warning, an individual weaved his way through the group, came up from behind Peter and, without saying anything, grabbed Peter's left arm, knocked him off balance, and forcefully pushed him to the ground. The unknown assailant did not announce himself or say anything before grabbing and pushing Peter. He was dressed in all black and nowhere on his clothing was any "Police" insignia or identification visible to Peter. No badge was visible. There was nothing to indicate that the individual was a member of the New York City Police Department. In any event, as the unknown individual came from behind Peter, Peter could not have seen any markings even if there were any. As Peter subsequently learned, that individual

was a New York City Police Officer named Geong Kim, Tax Reg. # 949167 (As previously defined, "P.O. Kim" or "Kim").

20. Additional officers in SWAT or counterterrorism gear, whose identities remain unknown, appeared, as if out of nowhere, with weapons drawn. After knocking Peter to the ground, P.O. Kim pushed his arm into Peter's jaw to hold him to the ground, causing severe and long-lasting pain. Peter's head had crashed into the ground and his glasses came off, and P.O. Kim applied severe pressure to Peter's body and head against the hard concrete. There was no precipitating event and Peter never offered any resistance. Yet P.O. Kim used a chokehold on this middle school science teacher while he was on the ground surrounded by a SWAT team pointing their weapons at him.

21. The officers' spontaneous assault was witnessed by many of Peter's colleagues, who were walking with him out of the stadium when P.O. Kim ambushed him.

22. P.O. Kim and the John Doe officers rolled Peter over onto his stomach and handcuffed him. While he was lying face down on the concrete, handcuffed and pinned down by multiple officers, one of the John Doe officers kicked him—or possibly struck him with his machine gun—with intense force in the buttocks causing profound bruising. The officers frisked Peter and confiscated his wallet and phone. No one told him that he was being arrested, much less for what, or what his rights were. The handcuffs put on by P.O. Kim were so tight that they caused severe pain.

23. The SWAT team officers pointed their weapons to disperse Peter's colleagues, preventing them from coming to Peter's aid despite their understandable concern over what was happening.

**Without Justification P.O. Kim And Other Defendants Confined Peter, Deprived Him Of Obviously Needed Medical Treatment, And Instituted False Charges Against Him In An Effort To Obscure Their Own Wrongful Conduct**

24. Peter was then taken into an NYPD security room at Citi Field and put in a holding cell. He was bleeding from the forehead. An officer took a picture of him. An officer recommended that he receive medical treatment for his head injury but P.O. Kim actively blocked the necessary treatment.

25. When an EMT arrived, he expressed shock upon seeing Peter's head wound. The EMT sought to provide Peter with medical treatment, but P.O. Kim and the John Doe Officers refused to let him enter the holding cell to be examined and treated, and refused to let Peter come out. The only thing the officers allowed was for the EMT to pass Peter some gauze through the bars of the holding cell, a manifestly insufficient approach for a swollen and still-bleeding head wound.

26. Peter requested permission to contact his wife or a member of his group but P.O. Kim and the John Doe officers refused. Peter asked P.O. Kim and the John Doe defendants what he had done wrong but no one would answer him. P.O. Kim only mocked Peter, saying "you don't know what you did Peter?" in an unprofessional tone.

27. After a period of time, Peter was taken in a police car to the 111th Police Precinct in Bayside Queens, even though Citi Field is within the 110th Precinct. The 111th is not even a neighboring precinct to the 110th, but lies at the far eastern edge of Queens, on the border of Long Island, beyond the adjacent 109th. Upon information and belief P.O. Kim and the John Doe officers took Peter to the 111th rather than the 110th because they thought their mistreatment of Peter would receive less scrutiny. P.O. Kim sat in the back of the car with Peter, who was in handcuffs the entire time. When Peter arrived at the 111th Precinct, his forehead was still bleeding.

28.     An EMT arrived at the Precinct who, like the EMT that saw Peter at Citi Field, appeared shocked at the condition of Peter's head wound.  And as at Citi Field, P.O. Kim and the John Doe officers again blocked Peter from receiving appropriate medical treatment.  Peter was placed in a holding cell and given gauze and an ice pack by EMTs through the bars of the holding cell at the Precinct.  Despite his obvious need for further medical attention, none was provided.

29.     By this time Peter was experiencing severe pain to his left knee from being tackled to the ground and manhandled on the concrete by multiple officers.  His right knee also began to hurt.  More photographs were taken of him.  He was not given any food although by this time it was early morning of June 3 and he had been in police custody since approximately 10 pm the night before.

30.     Peter told P.O. Kim that his brother was a police officer who had spent 5 years at the 46th Police Precinct in the Bronx before becoming a police officer in Connecticut.  P.O. Kim called Peter's brother and spoke to him but did not allow Peter to speak to him, or to call anyone else.  Peter was not able to be in contact with his wife until several hours after he was expected to be home.

31.     Peter was then taken in handcuffs to Central Booking in Queens.  Whenever Peter was in handcuffs, P.O. Kim would force his hands up high into a painful position, for the sole apparent purpose of causing Peter unnecessary pain and discomfort.

32.     At Central Booking, pictures were again taken, and other procedural tasks were undertaken, such as check-in.  Although Peter had asked several times prior and while at Central Booking to be allowed to call his wife, the requests were refused.  In addition, P.O. Kim had left Peter's phone at the 111th Police Precinct.

33. While at Central Booking, Peter was in a holding cell with 7 or 8 other individuals, including persons he understood were charged with being drug dealers, car thieves, and johns. After a long time, he was taken to a different cell, with several different individuals. At all times in these cells, Peter felt unsafe. His name was eventually called, and he spoke to an attorney.

34. Peter was then taken before a judge, in handcuffs. The judge looked at him and the charges and immediately asked if the charges could be adjourned in contemplation of dismissal. The assistant district attorney agreed, and Peter was released about 3:00 p.m. on June 3, 2017.

35. Peter then had to return to the 111th Police Precinct to get his phone that P.O. Kim had left there. Peter finally got home about 4:30 p.m. on June 3, 2017.

**The Police Officers' Outrageous Conduct Has Caused Peter Severe and Ongoing Harm**

36. Peter went immediately to the Emergency Room of Stamford Health, where he was diagnosed with a head injury due to trauma, contusion of multiple sites, and a left knee-sprain. The bruise on his left knee corresponds exactly to where he had surgery on the left knee in 2014. Peter's right knee too was injured in the incident. Peter saw the doctor who performed the surgery on the left knee (and on the right knee in 2015) with respect to his knees several times after the incident.

37. Also as a result of the incident, a hearing and balance issue manifested itself about two weeks after the incident. On June 17, 2017, Peter went to the Greenwich Hospital Emergency Department, part of YaleNewHaven Health, and was diagnosed with "ear Noise/Buzzing, Left" in his left ear. He went to see a specialist thereafter. Peter also has short-term memory issues resulting from the incident.

38. In sum, Defendants P.O. Kim and the John Doe officers wrongfully beat, kicked, threw, and otherwise assaulted Peter without justification; falsely arrested and imprisoned him;

9

negligently and/or intentionally denied him food and necessary medical attention when he was in police custody, including by preventing medical personnel from providing him with proper medical attention; negligently and/or intentionally prevented him from communicating with his wife or brother; and instituted a criminal case against him based on knowingly false statements concerning the events of June 2, 2017.

## FIRST CLAIM FOR RELIEF
**(42 U.S.C. § 1983 – Excessive Force Against Individual Defendants)**

39. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

40. By engaging in the conduct described above, Defendant Police Officers, acting under color of state law, unnecessarily, unjustifiably and without probable cause or any lawful basis whatsoever, used excessive physical force against Peter, and did so intentionally and willfully, despite that Peter was not engaging in any conduct to physically resist or confront the Police Officers.

41. By engaging in the conduct described above while Peter was defenseless and not engaging in any conduct to resist or confront the Police Officers, the Defendant Police Officers used a degree of physical force against Peter that was objectively unreasonable, in violation of Peter's Fourth and Fourteenth Amendment rights.

42. The Defendant Police Officers' conduct directly and proximately caused Peter severe harm.

## SECOND CLAIM FOR RELIEF
**(42 U.S.C. § 1983 – False Arrest Against Individual Defendants)**

43. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

44. By engaging in the conduct described above, Defendant Police Officers, acting under color of state law, deliberately and intentionally confined Peter to police custody, from which he was not free to leave, by arresting him without probable cause, confining him at Citi Field, transporting him to the police precinct, maintaining him in police custody, and holding him in jail, as described above, until he was released following arraignment on June 3, 2017.

45. Peter was at all times held in custody against his will, and such confinement was completely without justification, probable cause, or any other lawful basis. Far from resisting the Police Officers' authority, provoking, acting out, or doing anything at all, Peter was attacked from behind by P.O. Kim, thrown to the ground by him, and lay on the ground helpless while a swarm of police officers descended on and assaulted him. Once they finished beating him, rather than letting him go the officers continued to unlawfully confine Peter in an attempt to justify their vicious and excessive force used to abuse a middle-aged school teacher.

46. By confining Peter against his will and without probable cause or any other lawful justification, the Defendant Police Officers deprived Peter of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

47. The Defendant Police Officers' conduct directly and proximately caused Peter severe harm.

### THIRD CLAIM FOR RELIEF
**(42 U.S.C. § 1983 – Inadequate Medical Care Against Individual Defendants)**

48. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

49. After being beaten, kicked, and abused by the Police Officers as set forth above, Peter was bleeding from his forehead and had an obvious need for medical attention.

50. Despite such obvious need, the Police Officers, acting under color of state law, allowed Peter to languish in a holding cell at Citi Field, in a squad car, at the precinct, and at Central Booking rather than obtaining medical treatment for him. Peter was not able to get to a hospital until the next day, after he was released, when he went to the emergency room.

51. By their acts and/or omissions, P.O. Kim and the other Police Officers acted with deliberate indifference to Peter's serious medical needs, and failed to secure timely and adequate medical attention and treatment for Peter as required for his serious injuries that the Defendant Police Officers caused.

52. By their acts and/or omissions, Defendant Police Officers violated Peter's rights guaranteed by the due process clause of Fifth and Fourteenth Amendments to the United States Constitution.

53. The Defendant Police Officers' conduct directly and proximately caused Peter severe harm.

## FOURTH CLAIM FOR RELIEF
**(42 U.S.C. § 1986 – Failure to Intervene Against Individual Defendants)**

54. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

55. Each of the Defendant Police Officers had an affirmative duty to intervene on Peter's behalf to prevent the violation of Peter's constitutional rights set forth above.

56. Despite a realistic opportunity to do so, Defendant Police Officers, acting under color of state law, failed to intervene on Peter's behalf to prevent the violation of his constitutional rights and severe injury to him. Such failure to intervene was malicious and/or demonstrated an intentional, reckless, and/or negligent indifference to Plaintiff's safety and legal rights, in violation of 42 U.S.C. § 1986.

57. The Defendant Police Officers' conduct directly and proximately caused Peter severe harm.

## FIFTH CLAIM FOR RELIEF
**(42 U.S.C. § 1983 – Supervisory Liability Against Individual Defendants)**

58. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

59. Upon information and belief, at all relevant times, certain of the John Doe Police Officers were senior and supervisory personnel at the NYPD (the "Supervisory Officers"), with supervisory responsibilities for the more junior of the Police Officers. The Supervisory Officers were responsible for the training, instruction, supervision, and discipline of the junior Officers, including, but not limited to, P.O. Kim, who committed many of the specific acts and omissions complained of herein.

60. The Supervisory Officers were grossly negligent in supervising the more junior of the Police Officers when, acting under color of state law, they either joined in applying excessive physical force and violence against Peter as described above or failed to prevent the more junior officers from doing so, allowing unconstitutional conduct to occur in their presence when they could have intervened to stop it.

61. The Supervisory Officers exhibited a deliberate indifference to Peter's rights by failing to properly supervise the more junior of the Police Officers, when, acting under color of state law, they either joined in applying excessive physical force and violence against Peter as described above or failed to prevent the more junior officers from doing so, allowing unconstitutional conduct to occur in their presence and they could have intervened to stop it.

62. If they had exercised appropriate supervision over the more junior Police Officers on the scene, the Supervisory Officers could have prevented the use of an excessive and

unconstitutional degree force against Peter, and Peter would not have been injured, or his injuries would have been less severe.

63. The Supervisory Officers' conduct directly and proximately caused Peter severe harm.

## SIXTH CLAIM FOR RELIEF
### (Negligent Hiring, Training, and Supervision)

64. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

65. At all relevant times, the Police Officers were employed by defendant NYPD, a department and/or agency of defendant City.

66. At the relevant times, the City and the NYPD had a duty to exercise reasonable care in the hiring, training, and supervision of its employee police officers.

68. 67. The City and NYPD failed to exercise reasonable case in the hiring training, and supervision of its employees, including P.O. Kim and the John Doe Police Officers. Upon information and belief, the City and NYPD knew or should have known that P.O. Kim and the John Doe Police Officers had a propensity to engage in brutal and violent conduct toward civilians and to falsely identify individuals as being confrontational, disruptive, or resistant when a true assessment of the facts and circumstances would have shown otherwise, and/or to engage in related or otherwise negligent behavior. Further, the City knew or should have known that P.O. Kim and/or the John Doe Police Officers were not properly prepared to discharge their duties regarding the identification of when and whether a citizen under their care was in need of intervention and/or medical assistance, and when and how such intervention or medical assistance should be provided.By reason of the City's and the NYPD's negligence, Peter has been severely harmed as set forth in this Complaint.

## SEVENTH CLAIM FOR RELIEF
### (Assault)

69. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

70. By their conduct described above, Defendant Police Officers intentionally and willfully came into physical contact with Peter in order to inflict physical injury on him, including by kicking, punching, beating and throwing him as described above. Defendant Police Officers deliberately brutalized Peter, arbitrarily and without justification, descended on him in large number and continuously and intentionally kicked, punched, and beat him, despite Peter's defenseless position, lack of resistance, and pleas for help.

71. The acts of Defendant Police Officers placed Peter in imminent apprehension of overwhelming physical harm from which he could not escape until the Police Officers on their own decided to stop brutalizing him.

72. The Defendant Police Officers' conduct directly and proximately caused Peter severe harm.

## EIGHTH CLAIM FOR RELIEF
### (Battery)

73. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

74. By their conduct described above, Defendant Police Officers intentionally and willfully came into physical contact with Peter in order to inflict physical injury on him, including by kicking, punching, beating and throwing him as described above. Defendant Police Officers deliberately brutalized Peter, arbitrarily and without justification, descended on him in large

number and continuously and intentionally kicked, punched, and beat him, despite Peter's defenseless position, lack of resistance, and pleas for help.

75. The Defendant Police Officers' conduct directly and proximately caused Peter severe harm.

**NINTH CLAIM FOR RELIEF**
**(False Arrest/False Imprisonment)**

76. Plaintiff repeats and realleges each and every allegation of all the preceding paragraphs of this Complaint as if fully set forth in this paragraph.

77. By engaging in the conduct described above, Defendant Police Officers deliberately and intentionally confined Peter to police custody, from which he was not free to leave, by arresting him without probable cause, taking him to the holding cell at Citi Field, transporting him to the police precinct, maintaining him in police custody at the precinct and at Central Booking, and holding him in jail, as described above, until he was released from police custody following arraignment on June 3, 2017.

78. Peter was at all times held in custody against his will, and such confinement was completely without justification, probable cause, or any other lawful basis. Far from resisting the Police Officers' authority, provoking, acting out, or doing anything at all, Peter was attacked from behind by P.O. Kim, thrown to the ground by him, and lay on the ground helpless while a swarm of the Officers descended on and assaulted him. Once they finished beating him, rather than letting him go, the Officers continued their unlawful confinement of Plaintiff based on their false characterization of Plaintiff's conduct.

79. The Defendant Police Officers' conduct directly and proximately caused Peter severe harm.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment in his favor and against each Defendant on each of the claims set forth above, and award him compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; pre- and post-judgment interest; and such other and further relief as the Court may deem just and proper.

Dated: New York, New York
October 1, 2018

Respectfully submitted,
**SCHLAM STONE & DOLAN LLP**

By: _s/ Elizabeth Wolstein_____
Elizabeth Wolstein
Thomas A. Kissane
Samuel L. Butt
26 Broadway
New York, New York 10004
Telephone No.: (212) 344-5400
Facsimile No.: (212) 344-7677
Email: ewolstein@schlamstone.com
Email : tkissane@schlamstone.com
Email: sbutt@schlamstone.com

*Attorneys for Plaintiff Peter Martin*